## THE LEIGHTON & HOWARD STEEL COMPANY

*v.*

## JOSEPH SNELL.

*Opinion filed October 24, 1905.*

1. APPEALS AND ERRORS—*whether answer to a special interrogatory was against weight of evidence is not considered.*   Whether or not the answer to a special interrogatory, which answer is in accord with the general verdict, was against the weight of the evidence is not a question which the Supreme Court will consider in determining whether a verdict should have been directed, if there is any evidence tending to support the verdict.

2. TRIAL—*when question whether servant used ordinary care is for the jury.*   Whether a molder's helper used ordinary care in attempting to repair a jib-crane with his back toward the traveling crane, which struck him in the back and injured him, is a question properly left to the jury under evidence that he had had but two weeks' experience at his work, that he was ordered by the molder to make the repair, and that the molder stood where he could see the traveling crane yet failed to warn the helper of its approach or of the danger.

3. SAME—*when the question of fellow-servants is for the jury.*   Whether a molder's helper, in making a repair on a jib-crane, is a fellow-servant of the molder is a question for the jury under evidence tending to show that the molders were authorized to direct their helpers in all matters pertaining to their work, and that the molders usually repaired jib-cranes or had their helpers do so.

4. MASTER AND SERVANT—*what tends to show authority to give orders.*   Proof of a uniform course of action by molders in direct-

ing the work of their helpers tends to show that such course is authorized by the master.

5. SAME—*fact that servant is inexperienced does not prevent his testifying what his duties were.* The fact that a servant has had but short experience in his work does not render incompetent his testimony as to what his duties were and under whose authority he worked, but only affects the weight of his testimony.

6. SAME—*a servant does not assume the risk of unusual and unknown dangers.* A servant does not assume, as incident to his employment, the risk of using appliances and doing extraordinary work, the danger of which is known to the master and unknown to the servant and is not apparent from ordinary observation nor ascertainable by the exercise of ordinary care.

7. INSTRUCTIONS—*phrase "find from the evidence" need not be repeated in each clause.* The direction that the jury "find from the evidence," which begins an instruction containing a single sentence though divided into clauses by semi-colons, applies to the entire sentence and need not be repeated in each clause.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

This was an action on the case brought by the appellee against appellant in the city court of East St. Louis, to recover for personal injuries received while in the service of appellant as a molder's helper. The cause was tried before a jury and a verdict rendered for $1999, and judgment was entered on the verdict.

The declaration consists of but one count, and in substance is as follows: That appellant was engaged in the business of making steel castings; that appellee was in the service of appellant in the capacity of a molder's helper; that it was the duty of appellant to exercise ordinary care to furnish appellee a reasonably safe place in which to perform his duties and not to expose him to unnecessary peril; that appellant negligently ordered appellee to get on top of a certain stationary crane which had been out of order and to put the same in workable order; that this was a dangerous ser-

vice for appellee to render, and that he did not comprehend the peril incident to the performance of it; that while appellee was endeavoring to put the crane in order, with due care and diligence, appellant so carelessly and improperly managed a certain other crane that appellee was struck and injured.

Appellee's injuries consist of the loss of all the fingers, with the exception of the thumb, on his right hand and the breaking of some of the bones of his left hand.

The case was tried four times in the city court, the verdict being for the plaintiff upon three of the trials and on one trial the jury disagreed. An appeal was prosecuted from the judgment so entered in the city court to the Appellate Court, and affirmed, and a further appeal is prosecuted to this court to reverse the judgments of the Appellate and trial courts.

The facts, as shown from the record, are substantially as follows: Appellant was engaged in the manufacture of iron and steel in the city of East St. Louis. It manufactured bolsters and castings of different kinds. The molds for the castings are made from patterns, which are placed in wooden boxes called "flasks." The box is divided into an upper and lower part, the upper portion being called a "cope" and the lower a "drag." The molds are made by molders and molders' helpers. It is the duty of the molder to place his pattern in the flask so that the sand which is filled in around the edge of the pattern is firmly placed, in order that the pattern will remain true, and also so that the facing sand is finished smoothly, so that the casting will have an even surface after it is made. The duties of the molder's helper consist of mixing the sand preparatory to placing it in the flask, bringing gasoline and small iron clamps called "jaggers," used in the construction of the mold, and, in short, waiting on the molder. After the mold is made it is placed to one side and is taken away by the crane-man by means of an overhead or overhanging or traveling crane.

In handling these flasks the molder uses, as the flasks are heavy, a compressed air hoist, commonly called a "jib-crane." This crane is attached to the wall, and consists of a double arm extending from the wall some sixteen feet, about three or four feet below the track on which the traveling crane runs. The motion of the arm is confined to a half circle. On the arm of this jib-crane is a small truck which runs backward and forward on the track on the arm of the jib. The truck has four wheels, and two of these wheels rest on each arm of the jib. Attached to this truck is a cylinder containing a piston-rod, and on the end of the piston-rod is a hook, to which are attached four chains. Two chains are also attached to the cylinder, which control the compressed air by which the jib is operated. The molder, in handling the flask, swings the arm of the jib over the flask, lowers the piston by the exhaust chain on the cylinder, attaches the chains that are on the hooks of the piston-rod to the flasks, when by pulling the opposite chain the piston-rod rises, and he swings the flask to the point he desires. The jib-crane is used only by the molders and helpers to get the castings out of the way. The flasks, copes and drags, together with the sand and the material used by the molders and helpers, are furnished them by the crane-men. This crane, described in the evidence as the "traveler," is two large beams or girders extending from one side of the building to the other, which is about one hundred and twenty-five feet. These girders are placed about four feet apart, covered, and connected on the ends by housing. On top of the steel girders a track is constructed, on which rest wheels which support the crane. On the beams or girders of the crane is the hoisting apparatus of the crane. Electricity is used for the motor power of the crane, and it is operated by a man called the "crane-man," who is situated in a small cage suspended from the girders on one end of the crane. Two men called "chain-men" follow the crane on the floor and attach and detach articles carried by the crane. The

track on which the traveling crane is situated is between three and four feet beyond the arm of the jib-crane. This traveling crane is in almost constant operation. The record discloses that the truck on the jib-crane arm occasionally gets off the track, which it had done on the occasion or at the time appellee was hurt, and when it gets off the track it becomes useless to the molders until it is replaced.

WISE & McNULTY, for appellant.

F. C. SMITH, and M. MILLARD, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

It is first insisted by appellant that the court erred in refusing the peremptory instructions asked at the close of the plaintiff's evidence and again at the close of all the evidence. The argument of appellant is upon the theory that unless appellee has shown, by the burden of proof, all the material allegations of his declaration, the peremptory instructions should have been given. This, of course, is not the law. The only thing this court can do is to look into the evidence to see whether or not there is any evidence fairly tending to support the plaintiff's cause of action, and if we find that there is, then it was not the duty of the court to give the peremptory instructions. There can be no question in this case but that the evidence at least fairly tended to prove all the material allegations of the declaration, which is all that is necessary. Appellee testified, and he was corroborated by other witnesses, that he was working under the molder and was instructed to obey the orders of the molder, and that the molder told him to "go up and fix the crane." He also testified that before he had attempted to get on the jib-crane he looked for the traveling crane and saw it standing still one hundred and fifty or two hundred feet away, and that after getting on the jib-crane his back was to the traveling crane, and it came upon him while he was in that position and

struck him in the back. The evidence also shows that Mc-Cash, the molder under whom appellee was working and who directed him to repair the crane, was standing in a position where he could have seen the traveling crane approaching, and was watching appellee fix the crane as he had told him to do, and that he never informed him of the danger. We think, from the evidence as shown from the above statement of facts, that it was not error to refuse the peremptory instructions.

It is next insisted that appellee did not use ordinary care under the circumstances, and that, if it was found that he did use ordinary care, he assumed the risk incident to the employment. The evidence discloses that appellee had only been in the employ of the company for about two weeks and knew very little of the routine of the work. The principle is well settled that the duty to warn an inexperienced employee is limited to those dangers which are not open or obvious or which are not likely to be appreciated in the exercise of ordinary prudence. While the plaintiff undoubtedly knew if the traveling crane was in motion it would strike him in the position he was in, yet he had a right to rely upon the fact that his superior, under whom he was working, was standing where he could see the crane and would inform him of any danger. In view of his inexperience we think the jury might well have found that appellant owed him the duty of warning him of the danger attending the doing of the work. While every person, in undertaking to work, assumes the risk ordinarily incident to his employment, he only agrees to labor in the situation and with the tools provided, and in so far as the condition of these are apparent or may be ascertained by the exercise of ordinary diligence and care he assumes the risk, yet he does not assume the risk of using instruments and doing extraordinary work, the danger in which is known to the master and unknown to the servant. Several witnesses testified that appellee was undertaking to replace the truck the same as other molders had

done before, and it was a common occurrence for the helpers to replace the truck, and if they could not get it back on the track they then sent for the machinists. Under the conditions here shown from the facts disclosed in this record we are unable to say, as a matter of law, that appellee did not use ordinary care or that he assumed the risk.

It is next contended that appellee was a fellow-servant of the molders and crane-men, and inasmuch as he was injured through their negligence he cannot recover. The court was asked to give, and gave, special interrogatories relative to the relation of fellow-servant, as well as general instructions, and the jury found, under proper instructions, that appellee was not a fellow-servant of the crane-men and molders. We deem it sufficient to say that whether they were or not fellow-servants, or whether the molder was a vice-principal in such matters and orders, were questions of fact for the jury. There was evidence fairly tending to show the molder was authorized to direct the action and work of appellee in all matters pertaining to the molder's work, and there was also evidence fairly tending to show the molders usually repaired the jib-crane or had their helpers do so.

It is next insisted that certain evidence introduced in relation to the duties of the molder and his helper was erroneous, but we can see no reason why it was not proper to prove the duties of the helper, or, in other words, what he did and under whose authority he acted. Proof of a usual or uniform course of action in a given matter at least fairly tends to show it is by authority. Other evidence was objected to upon the ground that the witnesses had only been in the employ for a short time and were not competent to testify to the duties of a molder's helper. It certainly is not the law that a party must be an expert to tell what his duties are and in what his labors consist while in the employ of a person or obeying the directions of one under whom he is working. The length of employment goes only to the weight and not to the competency of the evidence. We are

unable to find any error in the admission of the evidence complained of.

It is next insisted that it was error to give the ninth instruction, which reads as follows:

"If the jury believe, from the evidence, that the plaintiff was in the defendant's employ as a common laborer, and required, in the discharge of his duty, to assist other servants of the defendant, who were molders, as a helper, and was under the control or subject to the orders of said molders; that one of such molders negligently ordered or directed the plaintiff to repair, adjust or put in order the stationary crane in question; that in giving such order (if the jury believe, from the evidence, he gave it,) said molder was not a fellow-servant with the plaintiff, as defined by the instruction given on that question; that it was a dangerous service for him to perform and that the plaintiff did not appreciate or comprehend such danger; that while the plaintiff was endeavoring to carry out and execute such order the defendant so carelessly and improperly managed and controlled the other crane in question that the plaintiff was struck and injured by the same, as charged in the declaration, and that the plaintiff was in the exercise of ordinary care for his own safety before and at the time of his injury, the defendant is liable and a verdict ought to be returned for the plaintiff."

It is said of this instruction that it assumes that appellee and the molder were not fellow-servants. We do not agree with this contention. The instruction is long, and as printed is divided into three clauses by semi-colons, but it begins by informing the jury that if they believe from the evidence, and then follow the various matters contained in the instruction. The writer of the instruction unnecessarily, in the second clause, repeated the expression "if the jury believe, from the evidence," but it neither added to nor took from the instruction the force of the direction contained in the first part of the instruction, that all the matters therein following should be found from the evidence. It is not necessary that

each thought or element or act pointed out or specified in the instruction shall be preceded immediately by the requirement that the jury must find it from the evidence. Where the instruction contains but a single sentence and begins with the requirement to "find from the evidence" the matters therein, the direction to "find from the evidence" will apply to the entire sentence. *Chicago and Alton Railroad Co.* v. *Fisher,* 141 Ill. 614.

It is also said that the instruction omits the question whether the molder had the power or authority to direct the appellee to repair the crane. The instruction tells the jury that they must believe, from the evidence, that appellee was under the control or subject to the orders of the molder. If he was under the control and subject to the orders of the molder, and the direction was with reference to work that was in the line in which the molder was engaged, or if it concerned the repairing of tools or machinery which the molder handled in the prosecution of his work, as the evidence in this case shows was true, then the molder did have authority to give the order as a vice-principal and bind appellant, unless it could be said, under the evidence, as the jury were advised, that the molder and the helper were fellow-servants. We think the instruction is not subject to either of the criticisms made of it, and that while it is not artistically drawn it would be properly understood by the average mind.

Instruction 13 given for appellee is complained of also. It is said this instruction authorized a verdict for the plaintiff if the molders were authorized or were habitually allowed by the defendant to give orders and directions in regard to the repair of these jib-cranes, and that there is no evidence upon which to base the instruction. It may be first said that the instruction does not direct a verdict or authorize a finding for the plaintiff, nor do we agree with the statement that there is no evidence upon which to base it. We think the evidence strongly tends to show that the

molders and their helpers commonly did repair the jib-crane, and that the traveling crane-men and the machinists were only called upon when the efforts of the molders and their helpers failed. The contention that no witness testified that a helper ever repaired the jib-crane from the top cannot avail appellant. It was not a question of where the defect was or its nature. The record does tend to show that it was more easy and more usual to attempt the repair by letting the truck run to the lower end of the track at the lower end of the jib-crane and work it in place by the use of the piston-rod. It is not shown, however, that appellee had any knowledge of that method of doing the work, and if it were, it would not necessarily follow that he was not authorized to obey the instructions of his foreman and attempt to fix it wherever it was. The manner in which he attempted to do it would simply raise the question of the care of appellee in doing the work unless directed in some particular manner. Nor is it shown that the truck could have as well been brought to the lower end in this instance, which would be a question for the jury.

It is also insisted that there was error in the refusal of the court to give certain special interrogatories asked by appellant. We have looked into the interrogatories carefully, and find that the ones that presented ultimate facts were covered by those given at the request of appellee, and it was therefore not error to refuse them.

It is also insisted that the jury answered "no" to certain interrogatories when the preponderance of the evidence shows they should have been answered in the affirmative. The answers were in keeping with the general verdict, and, as we have already said, there is evidence in the record at least fairly tending to support the verdict, which is all that is required. We have nothing to do with the weight of the evidence.

Finding no reversible error the judgment of the Appellate Court is affirmed.                      *Judgment affirmed.*