## Frank Valentine v. Chicago City Railway Company.

### Gen. No. 12,533.

1. Master—*as to what duty to warn does not extend.* It is not the duty of the master to warn an inexperienced servant as to dangers which are the subject of common knowledge and which can be seen by ordinary observation.

2. Assumed risk—*as to what doctrine of, applies.* The doctrine of assumed risk applies as to those dangers which are obvious.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed June 12, 1906.

**Statement by the Court.** Appellant was injured while in the service of appellee, and upon the trial of an action to recover damages for such injuries the court, at the close of plaintiff's evidence, directed the jury to find the defendant not guilty, and from a judgment upon that verdict this appeal is prosecuted.

The defendant had in Chicago a large power-house in which were self-stoking furnaces. The coal was carried from a crusher to the furnaces by a conveyor which passed through the room in the basement of the power-house in which plaintiff was injured. The estimates of plaintiff's witnesses as to the dimensions of this room vary from a width of six to ten feet from north to south, and a length of from ten to twenty feet from east to west. The height of the room was about five feet. The conveyor ran through this room from east to west at about an equal distance from the north and from the south wall of the room and was operated by electricity. The plaintiff was injured while passing over the conveyor at a point about four feet west from the east wall of the room. The conveyor for a distance of about eight feet west from the east wall rested upon the level floor of the room. It consisted of four iron rails two inches square. Two of these rails were laid upon the floor about eighteen inches apart. About eighteen inches above each rail was one of the other rails. These rails were held in place by posts placed on the outside of each rail and by iron clamps which passed from one top rail under the lower rails and up to the other top rail. The coal was carried in iron buckets about eighteen inches square, each of which rested upon and was fastened to an axle, at each end of which was a wheel about eighteen inches high with a flange like a car wheel. These axles were fastened together inside of each wheel by a link or bar, in each end of which and eighteen inches apart was a

hole through which the axle passed.   The wheels ran upon the rails which lay upon the floor, the wheel proper on the top of the lower rail and under the upper rail, with the flange on the inner side of both the upper and lower rail. The axles when coupled together formed an endless chain which passed over a wheel at the furnace, thereby tipping the buckets over, and up over another wheel before reaching the crusher whereby the buckets were righted.   The diameter of the wheels was but little less than the distance between the axles, so each wheel followed closely behind the wheel ahead of it.   That part of the conveyor in the basement room was about two feet high and two feet wide from outside to outside of the upper rails, and the top of these rails was on a level with the top of the buckets which ran between them.   These wheels could not leave the track because of the flange and they could not raise up to pass over anything upon the track because of the upper rail. In passing through the basement room coal was continually spilled from the buckets, and the defendant kept two men in that room, one on each side of the conveyor, to shovel the coal that fell from the buckets back into them.   The only access to the room was through a door that led to that part of the room north of the conveyor.   To go to that part of the room south of the conveyor it was necessary to pass over the conveyor.   Plaintiff worked the night before the accident three hours in that part of the room north of the conveyor.   On the night of the accident he was sent to shovel coal in that part of the room south of the conveyor and passed over the conveyor in going to his work.   About two hours afterward, desiring to go to the toilet, he attempted to pass over the conveyor and in place of stepping upon the top of the upper rail, then across to the top of the other rail, he put his foot between the rails, whether on the lower rail or just below the upper rail does not clearly appear, and his foot was caught between the wheel and the rail and he was pulled forward until his foot came in contact with the post and he was so injured as to make it necessary to amputate his leg.

Valentine v. Chicago City Ry. Co.

The declaration upon which the case went to trial consisted of a second count, which, after alleging the ownership and operation of the power-house, alleged that appellee operated therein electrical machinery, beltings, gearings and other machinery, and a coal conveyer, and that plaintiff worked there as a day laborer; that he was ordered to work around and about the coal conveyor, and that it was the duty of defendant to warn, instruct and caution him of the danger of passing between and through the beltings, chains and gearings of the conveyor, but it did not regard its duty, but carelessly, negligently and wrongfully failed to warn, instruct and caution plaintiff in passing between and through the beltings, chains and gearings of the conveyor, and that by reason of the careless, negligent and wrongful conduct of the defendant in that behalf plaintiff, while in the exercise of due care for his own safety, was unavoidably caught and his leg was crushed by the chains, beltings and gearings of said conveyer, etc. Of a fifth count, in which it is alleged that defendant operated certain electrical machinery, gearings and beltings, and a certain coal conveyor, which was operated between certain floors of said electrical plant, and had many narrow iron buckets attached to its chains, gearings and beltings, and between the revolving chains, beltings and gearings was a narrow space about four feet in width; that appellant was ordered to work around and about the conveyor, and that it was necessary for him to pass between and through the said narrow space to perform his duties as a laborer, and that appellee carelessly, negligently and wrongfully failed to furnish appellant with sufficient light.

Another count charges the negligence of appellee to have been its failure to furnish appellant with a reasonably safe place in which to work. And another count charges the negligence to have been in failing to properly construct, protect, guard and cover the coal conveyor.

Richolson & Levy, for appellant; C. Stuart Beattie, of counsel.

WILLIAM J. HYNES, JOHN E. KEHOE and WATSON J. FERRY, for appellee; MASON B. STARRING, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

The plaintiff testified that during all the time he worked in the basement the conveyor was in operation; that he saw how it worked; that he saw that the conveyor passed between two posts that stood close to the conveyor, one on each side of it; that the wheels ran upon the iron rails that lay upon the floor; that when he crossed over the conveyor to go to the south side of it to work, "he stepped up on to the north rail and then from the north rail on to the south rail, and then down on the floor"; that above the wheels were iron rails a foot and a half apart; that when he crossed the conveyor he crossed it between the posts and the east wall and was trying to cross back at the same place when his foot was caught; and further testified as follows: "Q. What wheel caught your foot? A. The small wheel under the bucket. Q. That was one of the small wheels that run between the rails, was it not, with a rail above it and a rail under it? A. It runs upon one on the lower and there is one on the upper. Q. By one on the upper you mean that there is one rail above the little wheel? A. Yes."

Plaintiff was twenty-five years of age. He came to his injury because, in place of stepping up on the top of the upper south rail of the conveyor, he put his foot between the rails. He knew that the wheels of the conveyor ran between the rails. The danger of injury to anyone who should put his foot between the rails while the conveyor was in operation was a danger which was the subject of common knowledge and could be seen by ordinary observation. Against such a danger it is not the duty of the master to warn the servant or to instruct him how to avoid such danger.

"The principle is well settled that the duty to warn an inexperienced employee is limited to those dangers which are not open or obvious, or which are not likely to be ap-

preciated in the exercise of ordinary prudence." Leighton Co. v. Snell, 217 Ill. 152–157.

We do not think that under the evidence in this case the jury could have properly found that defendant's failure to warn the plaintiff of the danger attending the crossing of the conveyor, or to instruct him how to avoid such danger, amounted to or was negligence.

Plaintiff was obliged to cross the conveyor in going to and returning from that part of the basement which was south of the conveyor, and it was the duty of the defendant to use reasonable care to furnish the plaintiff a reasonably safe place to pass over in going to and returning from such work. We are not prepared to hold that with a post on each side of the conveyor, the crossing furnished was not reasonably safe, but if it was not, the danger was obvious and the plaintiff must be held to have assumed the risk. Montgomery Coal Co. v. Barringer, 218 Ill. 327, and cases there cited.

The judgment of the Superior Court will be affirmed.

*Affirmed.*