Chicago City Railway Company v. Vincenzo Sangiacomo.

Gen. No. 12,825.

1. MASTER—*extent of obligation to instruct.* The duty of the master to warn an inexperienced employe is limited to those dangers which are not open or obvious or which are not likely to be appreciated in the exercise of ordinary prudence.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of facts. Opinion filed December 28, 1906.

WILLIAM J. HYNES, SAMUEL S. PAGE and WATSON J. FERRY, for appellant; MASON B. STARRING, of counsel.

GEMMILL & FOELL, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

Appellee was injured while in the service of appellant and recovered for such injuries in an action on the case a judgment for $2,500 against appellant, from which judgment this appeal is prosecuted.

The declaration contains but one count. It avers that the defendant "was possessed of, using and operating in said power house, a certain machine for

hoisting coal from the basement to the engine room, which consisted of an endless metal chain to which metal buckets were attached, and which machine was operated by steam; that the defendant had constructed and maintained the machine in the basement of said power house insufficiently guarded or protected, and the basement of said house insufficiently lighted, so as to make it reasonably safe for the employes therein; that the fact that it was necessary to guard or protect the said machine to make it reasonably safe was known to defendant, or by the exercise of ordinary care could have been known to it; * * * that the defendant by its then servants, not fellow-servants, not regarding its duty in that behalf, and while so possessed of said hoisting machine, on or about the day aforesaid, ordered and caused the plaintiff, who was then and there in its employ, into the basement of said power house to secure a pickax * * * but the defendant, not regarding its duty in that behalf, carelessly and negligently failed and neglected to warn or inform the plaintiff of the location of said machine, and that it was unsafe and dangerous to approach too close to it, which said fact was unknown to the plaintiff, or by the exercise of ordinary care could not have been known to him, who was unfamiliar with said basement and machine; that while plaintiff was thus engaged in seeking said pickax in said basement, and while in the exercise of ordinary care, plaintiff's right leg was caught in said endless chain of said machine while it was in motion, and while he was in the performance of said work, so that his right leg became crushed and bruised, so that it became necessary to amputate it below the knee.''

Appellee contends that the declaration alleges: ''First: The conveyor or machine was not sufficiently guarded or protected. Second: The place was insufficiently lighted. Third: The plaintiff was ordered to go into the tunnel to secure a pickax, and it was then the duty of the defendant to warn the plaintiff of this

machine, and to inform the plaintiff that it was unsafe and dangerous to approach too close to it.''

The defendant had a large power house in which were self-stoking furnaces. The coal was shoveled from a car into a hopper, the lower end of which was at the west end of a room called a ''tunnel,'' in the south side of the basement of the power house, and it was in this room that plaintiff was injured. Beneath this hopper a conveyor ran east through the room and thence to the furnace, by means of which the coal was carried from the hopper to the furnace. The frame of so much of the conveyor as was in the room in question consisted of four iron rails. Two of these rails were laid upon the floor east and west about twenty-six inches apart. Directly above each of said rails was one of the other rails called a guard rail. These guard rails were supported and held in place by posts placed on the outside of each rail about four and a half feet apart, and by iron clamps or braces. These clamps or braces passed from the outside of one top rail under the lower rails and up to the outside of the other top rail, and were fastened to each rail. The guard rails were two and a half inches wide, the frame of the conveyor from outside to outside about two feet eight inches wide, and the top of the guard rails about two feet above the floor. The coal was carried in iron buckets, each of which rested upon and was fastened to an axle at each end of which was a wheel with a flange. These axles were fastened together inside of each wheel by a link or bar, in each end of which and eighteen inches apart from center to center, was a hole through which the axle passed. The wheels ran upon the rails which lay upon the floor, the wheel proper on top of the lower rail with its top half an inch below the upper rail with the flange on the inner side of both the upper and the lower rail. The buckets were twenty-four inches long and the space or play between the end of a bucket and the inside of a guard rail did not exceed an inch. They were eighteen inches wide

from outside to outside, so that there was no space between the sides of a bucket and the sides of the bucket in front or of that behind it. The axles when coupled together formed an endless chain which passed up over a wheel west of the hopper, thus righting the buckets, which then passed under the hopper when they were filled with coal while in motion, thence east through the room in question into the power house to the furnace, where the chain passed down over another wheel by which the buckets were tipped over and were then carried back to the first wheel, in passing over which they were righted as above stated.

The room called a "tunnel" was about seven feet wide and six feet high. The only entrance to it led down to the north side of the conveyor. The space on either side of the conveyor between it and the wall of the room was a little over two feet.

Plaintiff was, on the day of the accident, employed with three or four other men in shoveling coal from a car into the hopper above mentioned. He testified that the coal was frozen, that he asked his foreman for a pick and that the foreman told him to go into the tunnel above mentioned and get one; that he went down into the "tunnel," found no pick on the north side of the conveyor, but saw two or three on the south side; that he attempted to go over the conveyor and in doing so his foot was caught in the conveyor and he received the injuries complained of.

Whether plaintiff was so ordered to go into the "tunnel" for a pick is a question of fact upon which, under the evidence, the verdict of the jury must be held conclusive that he was so ordered.

He also testified that when he went into the "tunnel," the conveyor was not in motion; that it was started up just as he stepped on it. The declaration does not allege that the conveyor was not in motion when plaintiff went into the tunnel, or that it was started up while he was in the tunnel. Plaintiff's testimony as to the starting up of the conveyor is not

supported by the testimony of any other witness or by any fact or circumstance proved at the trial. There is much direct testimony that the conveyor was not stopped before the accident, the men who were shoveling coal into the hopper with plaintiff continued to so shovel coal up to the time that plaintiff's cries were heard, when they ran to his assistance and the foreman stopped the engine which operated the conveyor.

We do not regard the question whether the conveyor was in motion or standing still, when plaintiff went into the "tunnel," as of great importance under the declaration, but we think that the only just conclusion that can be drawn from the evidence is, that it was then in motion and was not stopped until after the accident.

Plaintiff testified in chief as to the manner in which he came to be hurt as follows: "I looked for the pick on the north side. I no see the pick; I look the other side of the machine. I look and saw two or three on that side. I went to jump on the top of the machine and I went to get it. I jump on and my foot go in it. Q. Tell what you did? A. I put my foot on the top of the conveyor and the machine started to work. One foot I put on this side and one on this side and this side the wheel caught my foot."

The conveyor was about two feet high. On each side of the buckets was an iron rail two and a half inches wide and every few feet were posts on each side of the rails connected by a bar or brace. There was no space between the side of a bucket and the side of the buckets in front and behind it in the conveyor, and between the end of a bucket and the rail there was only a space of an inch or less. A man's foot could not be caught between two buckets or between a bucket and the rail, and if he stepped upon or into a bucket which was in motion his foot could not be caught.

Taking plaintiff's testimony in connection with the construction of the conveyor, and it is clear that in

attempting to pass over the conveyor, plaintiff put the foot that was injured between the rails, either on top of the lower rail or just below the upper rail, for in no other way could his foot have been caught by a wheel. There was only half an inch play between the wheel and the rails, so that if his foot was once caught by the wheel, unless he was able to pull it loose, he must be dragged forward until he came to a post or clamp and then, as his foot could go no farther forward, it must be crushed between the wheel and the clamp or post.

We do not think that the defendant was bound to enclose the sides of the conveyor so as to make it impossible for a man to put his foot between the rails in front of a wheel, but think that the conveyor, constructed as it was, was reasonably well guarded and protected.

The contention that the defendant was guilty of negligence because the "tunnel" was not sufficiently lighted cannot be sustained. That there were incandescent electric lamps in the "tunnel" is certain. Plaintiff testified that there were two, one six feet away from the place where he was injured. The room was light enough to enable plaintiff to see the conveyor, to see the picks which were on the floor on the other side of the conveyor, and it does not appear that insufficient light in any manner caused or contributed to his injury.

We do not think that it was the duty of the foreman, if he did order the plaintiff to go into the "tunnel" for a pick, to inform him that the conveyor was dangerous or warn him that it was unsafe to approach too close to it. Plaintiff was of full age, had worked in the "tunnel" before, shoveling coal that fell from the buckets upon the floor back into the buckets, and knew the construction of the conveyor; knew that its wheels ran between its upper and lower rails, and must be held to have known that it was

dangerous to put his foot between the upper and lower rails.

Valentine v. C. C. R. R. Co., 127 Ill App. 436, was a case very much like this in its facts. The plaintiff, an employe of defendant, was injured in crossing over a conveyor like the conveyor in this case, and the trial court directed a verdict for the defendant, which was affirmed by this court. In that case we said: "Plaintiff was twenty-five years of age. He came to his injury because in place of stepping up on the top of the upper south rail of the conveyor, he put his foot between the rails. He knew that the wheels of the conveyor ran between the rails. The danger of injury to any one who should put his foot between the rails while the conveyor was in operation was a danger which was the subject of common knowledge and could be seen by ordinary observation. Against such a danger it is not the duty of the master to warn the servant or to instruct him how to avoid such danger.

"The principle is well settled that the duty to warn an inexperienced employe is limited to those dangers which are not open or obvious, or which are not likely to be appreciated in the exercise of ordinary prudence." Leighton Co. v. Snell, 217 Ill. 152, 157.

It was not, in our opinion, the duty of the defendant under the evidence in this case "to warn the plaintiff of this machine or to inform the plaintiff that it was unsafe or dangerous to approach too close to it," and its failure to so warn and inform the plaintiff was not negligence.

The judgment of the Circuit Court will be reversed, with a finding of facts.

*Reversed, with finding of facts.*